# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
YVONNE GIPSON,                          )
                                        )
      Plaintiff,                        )
                                        )
      v.                                )       **Civil Action No. 00-2865 (JMF)**
                                        )
WELLS FARGO CORP. *et al.*,              )
                                        )
      Defendants.                       )
_____ )

## MEMORANDUM OPINION

In an amended complaint naming as defendants numerous related corporate entities, plaintiff alleges that her employer discriminated against her on the basis of race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and 42 U.S.C. § 1981. Defendants have moved to dismiss the entire amended complaint under Rule 12(b)(1) and 12(b)(6),[1] arguing that plaintiff filed untimely, failed to exhaust her Title VII administrative remedies against all defendants other than Norwest Mortgage, Inc. ("Norwest"), failed to allege a *prima facie* § 1981 claim, and pled a § 1981 retaliation claim that is not actionable. Because plaintiff mistakenly filed her initial complaint against Wells Fargo Corporation, instead of her actual employer, Wells Fargo Home Mortgage, Inc. ("Wells Fargo Home Mortgage"), her

---

[1] Defendants filed a motion to dismiss, but because plaintiff presented evidence outside the pleadings in her opposition, this Court issued an Order that informed the parties the motion would be treated as a motion for summary judgment and granted the parties time to file any additional evidence or supplemental briefing. Defendants chose not to supplement their filings.

amended complaint will relate back to the date of her initial complaint and defendants' motion will be denied as to defendant Wells Fargo Home Mortgage.  As to Norwest Mortgage, Inc., that entity no longer exists and will be dismissed from the case.  In addition, based on defendants' representations in plaintiff's related case, Gipson v. Wells Fargo Home Mortgage, Inc., Civ. A. No. 05-1184, it is the court's intention that Wells Fargo Corporation and Wells Fargo & Company should also be dismissed, but plaintiff will be given the opportunity to show cause why they should remain in the case.

As for plaintiff's substantive claims, because plaintiff has alleged a *prima facie* case of race discrimination under § 1981, and claims for retaliation are actionable under § 1981, defendants' motion will be denied on plaintiff's § 1981 claims.  Finally, because defendants have failed to advance any argument in support of their motion on plaintiff's ADEA claims, their motion will be denied on those claims.

## I.    BACKGROUND

At the time of the complaint, plaintiff was an African-American employee of Wells Fargo Home Mortgage, which had conducted business under the name Norwest prior to changing its name on April 3, 2000.  Defendants' Motion to Dismiss First Amended Complaint ("Defs.' Mot.") at 5; Plaintiff's Supplemental Brief in Opposition to Defendants' Motion to Dismiss ("Pl.'s Supplement"), Ex. 1, at 4.  In 1998, plaintiff filed a complaint with Norwest alleging that certain managers had discriminated against her on the basis of race and age.  Amended Complaint ("Am. Compl.") ¶ 14.  Gipson and Norwest reached a settlement regarding these allegations.  Am. Compl. ¶ 15.  On November 3, 1999, she filed a charge of discrimination against Norwest with the Equal Employment Opportunity Commission ("EEOC") alleging that

she had been denied a promotion on the basis of race, sex, and age and that one individual

involved in the decision to deny her the promotion was a manager she had accused of

discriminating against her in her 1998 complaint.  <u>Plaintiff's Opposition to Wells Fargo and

Company's Motion to Dismiss</u> ("Pl.'s Opp'n") at 1-2.  On August 31, 2000, the EEOC issued a

right to sue letter regarding her charge of discrimination against Norwest.  Defs.' Mot. at 4.

Upon receiving her right to sue letter, plaintiff attempted to exercise her right to sue her

employer.  Plaintiff was aware that her employer had changed its corporate name, and her

attorney's office contacted the D.C. Corporation Commission in an attempt to determine under

what name her employer should be sued.  Pl.'s Supplement at 2; <u>id.</u>, Ex. 3, at 2; Pl.'s Opp'n,

Ex. 5.  Plaintiff's attorney's office was informed by the D.C. Corporation Commission that Wells

Fargo was registered to conduct business under the name "Wells Fargo Corporation."   Pl.'s

Supplement at 2.   Plaintiff subsequently named "Wells Fargo Corporation" in her first

complaint, which she filed on November 29, 2000.

Wells Fargo Corporation never responded to the initial complaint, and plaintiff,

accordingly, moved for default judgment on April 4, 2001.  Pl.'s Opp'n at 2.  On April 6, 2001,

Wells Fargo & Company, which was concerned that plaintiff intended to name it rather than

Wells Fargo Corporation, filed an opposition to plaintiff's motion for default judgment.

<u>Memorandum in Opposition to Plaintiff's Motion for Default Judgment</u> ("Mem. in Opp'n to Pl.'s

Mot. for Default J.") at 4.   In response to defendants' argument that plaintiff had not named her

employer in her first complaint, plaintiff filed an amended complaint on April 20, 2001 naming

every corporate entity that could conceivably be her employer.   Pl.'s Opp'n at 2.

– 4 –

Defendant Wells Fargo Corporation contends that plaintiff's Title VII claims in Counts I and III[2] are defective because plaintiff failed to obtain a right to sue letter against it.  The remaining defendants argue that they are entitled to judgment as a matter of law on Counts I and III of the amended complaint because the amended complaint was filed after the ninety-day period for bringing suit as required by Title VII and the amended complaint does not relate back to the date of the initial filing.  The defendants further contend that plaintiff's claim of discrimination under § 1981 in Count IV is defective because plaintiff has failed to allege a *prima facie* case.  Finally, defendants argue that they are entitled to judgment as a matter of law on plaintiff's claim of retaliation under § 1981 in Count V because § 1981 does not provide for such a cause of action.

## II.     DISCUSSION

Summary judgment is appropriate when a party can establish "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (emphasis in original).

### A.     Title VII Claims in Counts I and III

Plaintiff argues that, even though the Title VII claims brought against additional parties in her amended complaint were filed after the ninety-day period in which she could bring suit, the

---

[2] In Count III, plaintiff alleges retaliation in violation of both Title VII and the ADEA.

– 5 –

claims relate back to the date when she filed her initial complaint.  Pl.'s Supplement at 4.

Federal Rule of Civil Procedure ("Rule") 15(c) states, in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when . . .
>      (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>      (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

In this case, defendants do not dispute that the conduct that serves as the basis for the amended complaint is the same conduct that was set forth in the original complaint.  Likewise, defendants have not alleged that they will be prejudiced by allowing plaintiff to file her amended complaint.  Thus, for these claims to relate back, plaintiff need only show that (1) a newly named defendant knew, or should have known, that but for a mistake concerning the identity of the proper party, the action would have been brought against it; and (2) that defendant had notice of the action within the period provided for by Rule 4(m).

1.     Mistake

Rule 15(c) addresses "'the problem of the misnamed defendant.'"  Rendall-Speranza v. Nassim, 107 F.3d 913, 918 (D.C. Cir. 1997) (quoting Fed. R. Civ. P. 15 advisory committee's note).  Rule 15(c) explicitly requires that the party to be brought in by amendment "knew, or should have known that, but for a mistake concerning the identity of the proper party, the action

- 6 -

would have been brought against the party."  This language presupposes that "'the reason for [a defendant] not being named was a mistake of identity.'"  Grigsby v. Johnson, Civ. A. No. 95-213 (TFH/DAR), 1996 WL 444052, at *5 (D.D.C. May 14, 1996) (quoting Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994)).  The rule permits a plaintiff to correct the situation where the proper, but misnamed, defendant is before the court, not the situation where "the plaintiff fails to originally name a defendant because he lacks knowledge of [his] identity[.]"  Id. See also Roberts v. Michaels, 219 F.3d 775, 777-78 (8th Cir. 2000) (holding that "[t]he district court erred in failing to consider the well-recognized distinction between a complaint that sues the wrong party, and a complaint that sues the right party by the wrong name").

       In order to determine whether a plaintiff has brought suit against the wrong party or the right party by the wrong name, a court must examine the factual circumstances of a lawsuit.  In Datskow v. Teledyne, Inc., Cont'l Prods. Div., 899 F.2d 1298, 1300 (2d Cir. 1990), the plaintiffs brought suit against an aircraft engine manufacturer they believed to be named "Teledyne, Inc. Continental Motors Division."  The actual name of the manufacturer, however, was "Teledyne Continental Motors Aircraft Products, a Division of Teledyne Industries, Inc."  In determining that the case could be categorized as one of mislabeling, the court found four factors to be persuasive.  First, the complaint made it clear that the plaintiffs sought to sue the manufacturer of a particular engine manufactured only by the defendant.  Second, the caption of the complaint had the correct mailing address of the party the plaintiffs intended to sue.  Third, the plaintiffs had come very close to correctly naming the proper defendant in the caption of their complaint. Finally, the manufacturer, its parent company, and other subsidiaries held by the parent company all used the name "Teledyne" in their corporate names.  See id. at 1300-02.

– 7 –

The factors upon which the court relied in <u>Datskow</u> explain why this case is one in which the plaintiff has brought suit against the right party by the wrong name. First, since the outset of this suit, plaintiff has clearly sought to sue only one corporate entity - - her employer. Pl.'s Supplement at 5.

Second, the plaintiff's failure to properly name her employer in the first complaint was caused, in part, by the fact that three of the defendants use the words "Wells Fargo" in their corporate name. Indeed, defendant Wells Fargo Home Mortgage, the plaintiff's actual employer, simply holds itself out to the public as "Wells Fargo." Pl.'s Supplement at 2; Pl.'s Opp'n, Ex. 6. When plaintiff contacted the D.C. Corporation Commission and asked who the registered agent for Wells Fargo was, she was provided with the corporate name of "Wells Fargo Corporation" and the registered agent for that corporation. Pl.'s Supplement at 2; Pl.'s Opp'n, Ex. 5.

In addition, plaintiff came very close to correctly naming the defendant in the first complaint when she provided the name of "Wells Fargo Corporation." All of these factors suggest that this is a case where the right party has been sued by the wrong name and not where the plaintiff has named the wrong defendant. <u>Compare</u> <u>U.S. v. Davis</u>, 261 F.3d 1, 33 n.25 (1st Cir. 2001) (allowing amended complaint to relate back where plaintiff sued "Ashland Chemical Inc." rather than "Ashland Chemical Co."), <u>and</u> <u>Roberts</u>, 219 F.3d at 778 (allowing amended complaint that provided the correct name of the corporate defendant to relate back because the "misnomer principle is most obviously appropriate in cases where the plaintiff has sued a corporation but misnamed it"), <u>with</u> <u>Rendall-Speranza</u>, 107 F.3d at 918 (not allowing relation back where the plaintiff never intended to name the defendant that had been added in the amended complaint), <u>Sparshott v. Feld Entm't, Inc.</u>, 89 F. Supp. 2d 1, 2-3 (D.D.C. 2000) (not

allowing relation back where the plaintiffs were aware of another potential defendant at the time

they filed the initial complaint, but neglected to name it in their initial complaint).

Finally, defendant Wells Fargo Home Mortgage argues that it cannot be named in this

suit because it was not named in the plaintiff's initial EEOC complaint.  The plaintiff filed

charges of discrimination with the EEOC against Norwest on November 3, 1999.  Pl.'s Opp'n,

Ex. 2.  On April 14, 2000, Norwest changed its name to "Wells Fargo Home Mortgage, Inc."

Pl.'s Supplement, Ex. 1, at 1-4.  Defendant Norwest answered a request for information in the

EEOC investigation and knew that the charges filed by plaintiff alleged that her employer had

discriminated against her.  Pl.'s Opp'n, Ex. 4.  No one contests the fact that plaintiff fulfilled her

exhaustion requirements with respect to Norwest.  (Defs.' Mot. Ex. 2; Defs.' Reply at 2.)

Defendants have represented in this case that "[d]efendants Norwest Mortgage, Inc. and

Wells Fargo Home Mortgage, Inc. are separate companies" and that Norwest is the only proper

defendant in this suit.  Defs.' Reply at 2, 4.  Defendants argue that plaintiff cannot sue any entity

other than Norwest, because Norwest is the only defendant for which plaintiff obtained a right to

sue letter.  Defendants contend that Title VII law and fundamental concepts of fairness mandate

that no defendant other than Norwest can be named in this action.  Id. at 2.  Defendants explain

that because plaintiff did not file a charge of discrimination against Wells Fargo Home Mortgage

or Wells Fargo & Company with the EEOC, "[t]hese two defendants were never put on notice

that any charge was being brought against them."  Defs.' Mot. at 3.  If these two entities were

separate companies, it would be logical to conclude that Wells Fargo Home Mortgage would

have no notice of a claim filed with the EEOC against Norwest.

– 9 –

Defendants' representations, however, completely contradict the documents that they, themselves, have filed with the Department of Consumer and Regulatory Affairs for the District of Columbia and the Secretary of State for the State of California.  In documents filed with both offices, defendant Wells Fargo Home Mortgage sought and received recognition of the fact that the corporation formerly named "Norwest Mortgage, Inc." had changed its name to "Wells Fargo Home Mortgage, Inc."  Pl.'s Supplement, Ex. 1.  Wells Fargo Home Mortgage and Norwest are not separate entities but are different names given to the same corporate entity at different points in the corporate entity's history.

Plaintiff is not required to begin the exhaustion requirement anew, simply because defendant Norwest changed its corporate name in the middle of an EEOC investigation.  Plaintiff intended to sue her employer, Wells Fargo Home Mortgage, which is the corporate entity for which she obtained a right to sue letter.  Accordingly, Norwest Mortgage, Inc. (an entity no longer in existence) will be stricken as a defendant.  However, the elements of Rule 15(c) have been met with respect to plaintiff's naming Wells Fargo Home Mortgage as a defendant in her amended complaint.

Unfortunately, the situation with the other two entities is hopelessly muddled.  Nevertheless, in a joint report filed in plaintiff's related case against Wells Fargo Home Mortgage, Inc., the parties state:

> Counsel for defendant advised plaintiff's counsel that there was no reason to file this action [Civ. A. No. 05-1184] and counsel for both parties are now engaged in discussions to ensure that one or more entities responsible for the acts at issue in this suit to which any judgment would be issued are either already joined or will be substituted in as defendants.
> Defendant states that it has agreed to execute a Stipulation noting that Wells Fargo Home Mortgage is a division of Wells Fargo

- 10 -

>Bank, N.A., and that the proper employer for purposes of this case
>is Wells Fargo Home Mortgage, a division of Wells Fargo Bank,
>N.A.  Defendant's counsel denies ever advising plaintiff's counsel
>that "Wells Fargo & Co." was the proper party in interest for
>purposes of this case.

Joint Report to the Court, Civ. A. No. 05-1184, at 2.

Therefore, it appears that Wells Fargo Home Mortgage, Inc. should suffice as a defendant for all purposes in both cases.  It is the court's intention that Wells Fargo Corporation and Wells Fargo & Company will be dismissed as defendants, unless plaintiff can show cause why they should not.  Accordingly, plaintiff shall show cause, in writing, why Wells Fargo Corporation and Wells Fargo & Company should remain as defendants in this case, and defendants may respond ten days thereafter.

2.    Rule 4(m) Requirements

The second factor of Fed. R. Civ. P. 15(c)'s relation-back doctrine requires that defendant Wells Fargo Home Mortgage must have received notice of both the suit and the plaintiff's mistake within the period provided for by Fed. R. Civ. P. 4(m).  Rule 4(m) provides, in relevant part:

>If service of the summons and complaint is not made upon a
>defendant within 120 days after the filing of the complaint, the
>court . . . shall dismiss the action without prejudice as to that
>defendant or direct that service be effected within a specified time;
>provided that if the plaintiff shows good cause for the failure, the
>court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  The Advisory Committee Notes to Rule 15 state that by incorporating the language of Rule 4(m), Rule 15(c)(3) "allows not only the 120 days specified in [Rule 4(m)], but also any additional time resulting from any extension ordered by the court pursuant to the rule, as may be granted[.]"

The language of Rule 4(m) grants substantial authority to courts to extend the 120-day deadline.  The plain language of Rule 4(m) requires that a court extend time for service where good cause is shown.  The Supreme Court has noted that courts have the "discretion to enlarge the 120-day period 'even if there is no good cause shown.'"  Henderson v. United States, 517 U.S. 654, 662 (1996) (quoting Fed. R. Civ. P. 4(m) advisory committee's note).

Here, plaintiff will be deemed to have satisfied the requirements of Rule 15(c)(3) within the period provided for by Rule 4(m).  Plaintiff filed her amended complaint with the Court on April 20, 2001 and served defendants with the amended complaint on April 30, 2001.  Pl.'s Opp'n at 2; Affidavit of Service.  Both of these dates are more than 120 days from November 29, 2000, the date on which the initial complaint was filed.  Nevertheless, the presumptive 120-day allowance for achieving service of the summons and complaint should be extended under Rule 4(m) in this case for two reasons.

First, after plaintiff was made aware of the fact that she had misnamed a defendant in her initial complaint by defendant's opposition to plaintiff's motion for default judgment, plaintiff promptly filed an amended complaint with the Court and served defendants.  Even if plaintiff's failure to serve the proper defendant does not rise to the level of "good cause," plaintiff has shown that she has been prosecuting this case in a diligent manner and should be granted an extension.  Plaintiff was put on notice that she had named the wrong party only when the defendant had filed its opposition to the motion for a default judgment, after the 120-day period under the rules had already passed.  Plaintiff's diligence in filing an amended complaint fourteen days later with the Court merits an extension.

-   12   -

Second, procedural reforms were implemented to eliminate technicalities that prevent the substantive resolution of disputes, and consequently, the Federal Rules of Civil Procedure favor the disposition of genuine disputes on the merits.  See Anderson v. Bradford, Civ. A. No. 89-2776-LFO, 1990 WL 161916, at *5 (D.D.C. Oct. 11, 1990) (citing Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980)).  The permissive standard for extending deadlines created by Fed. R. Civ. P. 4(m), the policy of the Federal Rules of Civil Procedure, and the facts of this case dictate that plaintiff should be granted an extension.  See Wilke v. Bob's Route 53 Shell Station, 36 F. Supp. 2d 1068, 1072-73 (N.D. Ill. 1999) (extending the Rule 4(m) period applicable to Rule 15 because the plaintiff could show that the amended complaint arose from the same conduct as the initial complaint, that the new defendant had notice of the initial complaint, and that the new defendant knew, or should have known, that but for a mistake it would have been named in the initial complaint).

Accordingly, the period plaintiff had to serve the initial complaint on defendants will be *sua sponte* extended to April 30, 2001, *nunc pro tunc*.  Plaintiff's Title VII claims in her amended complaint against Wells Fargo Home Mortgage therefore meets all of the requirements for relation back under Rule 15(c)(3).  As such, defendant Wells Fargo Home Mortgage will not be granted summary judgment on Counts I and III.

**B**.    **ADEA Claims in Counts II and III**

Defendants have failed to offer *any* argument for why plaintiff's claim of discrimination on the basis of age in violation of the ADEA in Count II or plaintiff's claim of retaliation in violation of the ADEA in Count III should be dismissed.  Accordingly, defendants' motion to dismiss these claims will be denied.

**C.     Count IV**

Defendants argue that plaintiff has failed to establish a *prima facie* case of race

discrimination in violation of 42 U.S.C. § 1981 in Count IV of her amended complaint.

"The standards and order of proof in section 1981 cases have been held to be identical

to those governing Title VII disparate treatment cases." Berger v. Iron Workers Reinforced

Rodmen Local 201, 843 F.2d 1395, 1413 n.7 (D.C. Cir. 1988) (citations omitted).  Because

the standards of proof for § 1981 claims are identical to those developed for Title VII, a

plaintiff seeking to establish a *prima facie* § 1981 case must show that "'(1) she is a member

of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable

action gives rise to an inference of discrimination.'"  Stella v. Mineta, 284 F.3d 135, 145

(D.C. Cir. 2002) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).

Defendants attack the sufficiency of the count on the ground that the position plaintiff

sought was filled by someone of her own protected class.  However, in Stella, a Title VII case

alleging non-selection on the basis of gender, the D.C. Circuit made clear that "[a] plaintiff is

not required to show that the person(s) hired in his/her stead belong to a different gender or

race." Id. at 139.  Accordingly, defendants' argument is unavailing, and its motion will be

denied with respect to this count.

**D.     Count V**

Finally, defendants argue that Count V of plaintiff's amended complaint should be

dismissed because no cause of action exists under § 1981 for retaliation.

In Carney v. American University, 151 F.3d 1090, 1094-95 (D.C. Cir. 1998), the D.C.

Circuit declined to address the issue of whether a cause of action for retaliation exists under

- 14 -

§ 1981 because the issue had not been raised on appeal.  The court deemed the issue to have been waived and assumed that § 1981 provided a cognizable cause of action for retaliation.

Each side advances an argument for why the case law in this district supports its position.  Plaintiff argues that one district court in this district has held that a plaintiff can sustain an action for retaliation under § 1981 where "the retaliation is alleged to have been motivated originally by racial discrimination."  Cox v. Consolidated Rail Corp., 557 F. Supp. 1261, 1266 (D.D.C. 1983).  The defendants, on the other hand, have identified another case, Webb v. District of Columbia, 864 F. Supp. 175, 187 (D.D.C. 1994), in which a district court in this district held that a retaliation claim is not actionable under § 1981.

While Webb does support defendants' position, it did not consider the effect of the Civil Rights Act of 1991 on § 1981.  The scope of § 1981 coverage was expanded by the Civil Rights Act of 1991.  See Hunter v. Ark Rests. Corp., 3 F. Supp. 2d 9, 15 n.3 (D.D.C. 1998).  Prior to the Civil Rights Act of 1991, the Supreme Court interpreted § 1981 to protect individuals in contract formation, but not to protect individuals against problems that would arise in the course of a contractual relationship.  See Patterson v. McClean Credit Union, 491 U.S. 164, 176 (1989).  The Civil Rights Act of 1991, however, expressly rejected Patterson's limited understanding of the scope of § 1981, see Hunter, 3 F. Supp. 2d at 15 n.3, and provided a definition of "make and enforce contracts" that "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Webb cited Patterson and two other opinions – Williams v. National Railroad Passenger Corp., 716 F. Supp. 49, 51 n.2 (D.D.C. 1989) and Saunders v. George Washington

- 15 -

University, 768 F. Supp. 854, 868 (D.D.C. 1991) – in holding that a retaliation claim cannot

be sustained under § 1981.  In concluding that no claim for retaliation exists under § 1981, all

three of these district court cases relied upon Patterson's limited definition of the scope of

§ 1981 rather than the current scope of § 1981.  Williams, 716 F. Supp. at 51 n.2; Saunders,

768 F. Supp. at 868; Webb, 864 F. Supp. at 187.

Since the passage of the Civil Rights Act of 1991, a host of courts in this district have

reached the merits of § 1981 retaliation claims without questioning the existence of such a

cause of action.  See, e.g., Glymph v. Dist. of Columbia, 211 F. Supp. 2d 152, 153 (D.D.C.

2002) (noting that "it is undisputed that a plaintiff may bring a section 1981 retaliation

claim"); Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp. 2d 174,

182 (D.D.C. 2002) (denying motion to dismiss for failure to state a claim for race

discrimination and retaliation under Title VII and § 1981 without discussion of whether the

cause of action existed); Kidane v. Northwest Airlines, Inc., 41 F. Supp. 2d 12 (D.D.C.

1999); Beckwith v. Career Blazers Learning Ctr., 946 F. Supp. 1035 (D.D.C. 1996); Lewis v.

American Foreign Serv. Assoc., 846 F. Supp. 77 (D.D.C. 1993).  The fact that courts and

litigants in this district have proceeded to the merits of § 1981 retaliation claims is not

surprising.  Retaliating against an employee for vindicating her rights under § 1981 by

denying her the benefit or privilege of being considered for promotion free of racial

discrimination denies a person her right to make and enforce contracts under § 1981 as

amended by Congress.

Likewise, other circuits have expressly recognized that § 1981 supports a cause of

action for retaliation.  See, e.g., O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1258 (10th

Cir. 2001) (holding that "[b]oth Title VII and § 1981 support a cause of action for retaliation

and require a plaintiff to establish the same *prima facie* elements to recover"); Andrews v.

Lakeshore Rehab. Hosp., 140 F.3d 1405, 1412-13 (11th Cir. 1998) (recognizing that certain

claims of retaliation are cognizable under § 1981); Kim v. Nash Finch Co., 123 F.3d 1046,

1059 (8th Cir. 1997) (holding that "like the substantive claim of racial discrimination, a claim

of retaliation, in a racial discrimination context, can violate both Title VII and 42 U.S.C. §

1981").[3]

Defendants have offered only one case to support their argument that a cause of action

for retaliation does not exist under § 1981.  Defs.' Mot. at 6-7.  Defendants have not cited one

case in which a court applied the Civil Rights Act of 1991, rather than Patterson, and

concluded that a cause of action for retaliation cannot exist under § 1981.  The cases applying

the standards of the Civil Rights Act of 1991 in this district and in other circuits uniformly

support the notion that a cause of action for retaliation exists under § 1981.  Accordingly,

defendants' motion regarding plaintiff's § 1981 claim for retaliation will be denied because

such a cause of action does exist under § 1981.

## III.   CONCLUSION

---

[3]   In fact, the only circuit court cases decided after the passage of the Civil Rights Act of
1991 that have held that a cause of action for retaliation does not exist under § 1981 are cases
that were decided under the Patterson standard, because the Civil Rights Act of 1991 did not
apply retroactively to cases that had been filed before its enactment.  Compare Von Zuckerstein
v. Argonne Nat'l Lab., 984 F.2d 1467, 1472 n.2 (7th Cir. 1993)(finding that no cause of action
existed for retaliation under Patterson); Williams v. First Union Natl. Bank of N.C., 920 F.2d
232, 234 (4th Cir. 1990) (using Patterson standard) with Ajayi v. Aramark Bus. Services, Inc.,
336 F.3d 520, 533 (7th Cir. 2003)(setting forth the prima facie elements of a claim brought under
post-Civil Rights Act amendment § 1981); Bryant v. Aiken Reg'l Med. Centers, Inc., 333 F.3d
536, 543 (4th Cir. 2003) (setting forth the elements of a § 1981 retaliation cause of action).

-   17   -

Plaintiff's Title VII claims in her amended complaint against Wells Fargo Home Mortgage relate back to the date of her initial complaint, and this defendant is not entitled to summary judgment on plaintiff's Title VII claims in Counts I and III.  However, for the reasons stated above, Norwest will be stricken as a defendant in this case.  In addition, unless plaintiff can show cause why defendants Wells Fargo Corporation and Wells Fargo & Company should remain as defendants in this case, they will also be dismissed.

The defendants have not made any arguments for why plaintiff's ADEA claim of discrimination in Count II or plaintiff's ADEA claim of retaliation in Count III are deficient. Accordingly, defendants will not be granted summary judgment on these claims.

Because plaintiff has alleged a *prima facie* case of § 1981 discrimination, defendants' motion for summary judgment will be denied with respect to this count as well.  The motion for summary judgment on plaintiff's § 1981 claims for retaliation on the theory that no such cause of action exists under § 1981 will also be denied, because claims for retaliation are actionable under § 1981.

An Order accompanies this Memorandum Opinion.


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: